IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLORIA WHITING,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )
                                         )   Civil Action No. 09-1113
OFFICER LARRY A. BONAZZA, OFFICER        )
AMBER PRICE, GARY HAVELKA, SMITH         )
TOWNSHIP and BURGETTSTOWN                 )
BOROUGH,                                 )
                                         )
                                         )
                Defendants.              )

# MEMORANDUM OPINION

CONTI, District Judge.

## I. Introduction

Pending before the court are two motions to dismiss the amended complaint of *pro se*
plaintiff Gloria Whiting ("Whiting" or "plaintiff"). [1] (ECF No. 36.)  On September 10, 2010,
defendants Amber Price ("Price") and Burgettstown Borough jointly filed a motion to dismiss
the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")
(ECF No. 39), and defendants Larry A. Bonazza ("Bonazza") and Smith Township jointly filed a

---

[1] On September 30, 2009, defendant Gary Havelka ("Havelka") filed a motion to dismiss the original complaint
(ECF No. 9) and a brief in support (ECF No. 10), but did not file a motion to dismiss the amended complaint.  The
court will sua sponte address the issues raised in Havelka's previous motion as those issues were preserved when the
court granted the motion to dismiss without prejudice in its memorandum opinion dated July 2, 2010.  See, e.g.,
McKnight v. Bryant, No. 09-5128, 2009 WL 3681908, at *2 (D.N.J. Nov. 2, 2009) (*pro se* complaint alleged
violations of § 1983 against a judge and the court sua sponte considered whether the doctrine of judicial immunity
applied); Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (upholding district court's sua sponte
dismissal of claim against a judge even when that judge did not so move – the plaintiff was given notice that other
defendants were moving for dismissal and an opportunity to respond to those motions, there was no evidence of
injury in the allegations against the judge, and it was clear the judge would have been shielded by judicial
immunity).

motion to dismiss Whiting's amended complaint pursuant to Rule 12(b)(6).[2]  (ECF No. 43.)  For

the reasons set forth below, the motions to dismiss are granted in part and denied in part.


## II. Background

On August 21, 2009, plaintiff, proceeding *in forma pauperis* and *pro se*, filed her original

complaint against defendants (ECF No. 2) possibly pursuant to the Civil Rights Act of 1871, 42

U.S.C. § 1983 ("§ 1983").  In plaintiff's original complaint, there were no factual allegations

supporting her claims against defendants or demonstrating how plaintiff's rights were violated by

any defendant.  On July 2, 2010, the court entered a memorandum opinion and order granting

defendants' motions to dismiss the complaint and permitting plaintiff leave to amend the

complaint.  (ECF No. 34.)  The amended complaint is the subject of the present motions to

dismiss.

### A. Facts

#### 1. Incidents concerning the officers and municipal defendants

The following undisputed facts are gathered from plaintiff's amended complaint.

Plaintiff is a sixty-six-year-old disabled female of African American parentage who resides at 21

Colony Road, Burgettstown, Pennsylvania.  (Am. Compl. at 2.)  Bonazza is a police officer for

Smith Township in Washington County, Pennsylvania and Price is a police officer for

Burgettstown Borough in Burgettstown, Pennsylvania.  (Id.)

On July 16, 2008, plaintiff asked unidentified individuals at the Smith Township office to

enforce a ten o'clock curfew on a playground basketball court adjacent to her property.  (Id.)

Later that day, plaintiff was in her yard when a teenager named Bryan King ("King"), an

---

[2] Price, Burgettstown Borough, Bonazza, Smith Township and Havelka are collectively referred to in the
memorandum opinion as "defendants;" Price and Bonazza together as "officers;" and Burgettstown Borough and
Smith Township as "municipal defendants."

individual who had given plaintiff trouble for several years, called plaintiff names, threatened her, and yelled "there will be no curfew." (Id. at 2-3.) Plaintiff contends King discovered she had asked the Smith Township office to enforce the curfew. (Id. at 3.) As a result of King's threats, plaintiff called 9-1-1 and Bonazza responded to the call. (Id.) Plaintiff alleges that at the time Bonazza responded to her call, she was in her yard and not on the playground. (Id.) During his response to the call, Bonazza allowed other people to enter onto plaintiff's property to complain that they did not want a curfew. (Id.) Plaintiff contends these individuals threatened her, and one woman yelled at her and threatened to "beat [her] ass." (Id.) Plaintiff requested Bonazza to instruct the individuals to leave her property, but he responded "I think you are the problem here," while laughing, and then told plaintiff he was going to cite her. (Id.) Bonazza told plaintiff to go into her house and plaintiff responded by again requesting the individuals to leave her property, at which point Bonazza said to plaintiff, "No I think I'll arrest you." (Id.)

　　　　Bonazza called for Price, who arrived on the scene and grabbed plaintiff by her right arm, turned her around, pushed her hard against the police vehicle, tightly placing handcuffs on her. (Id.) Plaintiff asserts that Price's physical maneuvers hurt plaintiff's artificial knee, left knee, back, and right arm. (Id.) Plaintiff became visibly upset, started crying, and asked the officers to stop the arrest. (Id. at 4.) Plaintiff asked the officers to refrain from putting her in the backseat of the vehicle because she had a panic and anxiety disorder. (Id.)[3] Plaintiff asked the officers to telephone her doctor and the officers declined and stated "We Don't Have a Limosene [sic] to ride You In." (Id.)

　　　　Bonazza pushed plaintiff's head down and pushed her into the backseat of the police vehicle. (Id.) The officers took plaintiff to the Smith Township police department. (Id.)

---

[3] It is unclear from the face of the complaint whether plaintiff told the officers that she suffered from a panic and anxiety disorder.

Because of her legs, plaintiff had a difficult time keeping up with the pace of the officers. (Id.)
Bonazza told plaintiff to "move" when she was handcuffed to a chair at the police department.
(Id.) The officers decided to transport plaintiff from the Smith Township police department to
the Hanover police department for her arraignment. (Id.) Police Chief Bernie LaRue ("LaRue")
instructed the officers over the telephone to handcuff plaintiff in the front of her body and to
place her in the backseat of the police vehicle. (Id.) Bonazza drove fast on the way to the
Hanover station and plaintiff became upset and asked him to slow down, but he refused her
request. (Id. at 5.) Plaintiff asserts that Bonazza was laughing at her during the arraignment and
that the officers and their friends harassed plaintiff for not pleading guilty to the charge of
disorderly conduct. (Id.)

### 2. Incidents concerning Havelka

Havelka is a magisterial district judge in Washington County, Pennsylvania. (Havelka's
Mot. to Dismiss (ECF No. 9) at 1.) Plaintiff alleges that Havelka was the "moving force" in her
case of disorderly conduct. (Am. Compl. at 8.) After plaintiff's arrest and arraignment, Havelka
allegedly falsified court documents related to the charges against plaintiff. (Id.) Plaintiff asserts
Havelka falsified papers by (1) placing an incorrect name, address, and date on preliminary
documents; (2) sending a false citation to plaintiff in the mail; and (3) adding "engaged in
fighting" as an extra charge on the criminal complaint. (Id. at 8-9.)

Plaintiff contends Havelka threatened her with more criminal complaints if she did not
plead guilty to the charge of disorderly conduct. (Id. at 8.) Plaintiff asked Havelka if her son
could help her at a hearing and Havelka denied her request. (Id. at 9.) Havelka sent plaintiff's
case to a state court judge in Cecil, Pennsylvania and plaintiff's final hearing was held on June 8,
2009, where she was found not guilty on the charge of disorderly conduct. (Id. at 9-10.)

### III. Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2nd Cir. 2007)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Pro se plaintiffs are held to a less stringent standard than individuals represented by counsel. Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("pro se litigants are held to a lesser pleading standard than other parties"). A pro se plaintiff, however, is still required to adhere to standard rules of civil procedure. See McNeil v. United States, 508 U.S. 106, 113 (1993); Haines v. Kerner, 404 U.S. 519, 520 (1972). While the court must accept as true all factual allegations in a complaint, it "need not credit a complaint's . . . legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Even though plaintiff is pro se, she must "set forth sufficient information to outline the elements of [her] claim." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)). Thus, plaintiff is required to present enough factual allegations for the court, accepting

those allegations as true, to determine whether there is a plausible claim that defendants violated plaintiff's federal rights.  Id.

If a complaint does not comply with the rules of civil procedure, courts are to notify plaintiffs that they have leave to amend their complaints unless the amendment would be inequitable or futile.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (reversing district court for failing to grant plaintiff right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile).  Allowing for amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires."  A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile.  In re Burlington Coat Factory Litig., 114 F.3d at 1434.  An amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted.  Id.; see Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (noting that failure to overcome the time bar of a statute of limitations renders a proposed amendment futile).

## IV. Discussion

Plaintiff brings her host of claims against defendants pursuant to § 1983. [4]  To successfully establish a claim under § 1983, a plaintiff must demonstrate that a person or entity

---

[4]  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

7

intentionally deprived her of a federally protected right. See Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown, 520 U.S. 397, 404 (1997). A plaintiff is required to establish two prongs to prevail on a claim under § 1983: (1) deprivation of a federal right and (2) "that the person who has deprived [her] of that right acted under color of state or territorial law." See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Plaintiff brought the following claims against various defendants alleging deprivations of several constitutional rights: (1) excessive force against Price and Bonazza in violation of the Fourth Amendment; (2) false arrest against Price and Bonazza in violation of the Fourth Amendment; (3) malicious prosecution against Bonazza in violation of the Fourth Amendment; (4) conspiracy against defendants pursuant to § 1983; (5) deliberate indifference against Price and Bonazza under the Eighth Amendment; (6) due process violations against defendants in violation of the Fifth and Fourteenth Amendments; and (7) various claims against Havelka. Plaintiff also averred a state law claim for intentional infliction of emotional distress against Bonazza. The court will separately address each claim. The court will first address the issue of municipal liability with respect to Burgettstown Borough and Smith Township, because resolving that issue dispenses with all claims against those defendants.

### A. Municipal liability under § 1983

The court discerns two claims brought against municipal defendants under § 1983 from the face of the amended complaint: (1) due process violations under the Fifth and Fourteenth Amendment; and (2) conspiracy. A municipality may only be held liable under § 1983 when the

---

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

alleged violation is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policymaker.  City of St. Louis v. Praprotnik, 485 U.S. 112, 122-23 (1988). There is no *respondeat superior* theory of municipal liability, and no municipality may held vicariously liable for the actions of its employees under § 1983.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978).  On the contrary, a municipality can only be liable under § 1983 if its policy or custom is the "moving force" behind the constitutional violation.  Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006).  In order to be considered a "moving force" the policy or custom must be shown to have a direct causal link to the alleged constitutional deprivation.  City of Canton v. Harris, 489 U.S. 378, 389-90 (1989).

In addition to causing the deprivation, the policy or custom must reflect or result in "deliberate indifference" to the rights of people.  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  "It is a particularly willful type of recklessness that is inherent in the deliberate indifference standard."  Simmons v. City of Phila., 947 F.2d 1042, 1060 n.13 (3d Cir. 1991).  In order to assert a constitutional violation against a municipality, a plaintiff must show that deliberate "indifference resulted either from a decision officially adopted and promulgated or from a permanent and well-settled practice."  Id. at 1059.  A plaintiff must present "evidence of such indifference on the part of . . . officials with the authority to make municipal policy."  Id. Thus, "absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train."  Id. at 1063.

The Court of Appeals for the Third Circuit has noted:  "Our jurisprudence is clear that '[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or

decision officially adopted by the governing body or informally adopted by custom.'" McTernan v. City of York, Pa., 564 F.3d 636, 657 (3d Cir. 2009) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  Municipal liability must be premised on a policy or custom.  Id. A policy is made "when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S 469, 481 (1986)).  A custom is a practice "'so permanent and well-settled' as to virtually constitute law." Id. (citations omitted). "Custom requires proof of *knowledge and acquiescence* by the decisionmaker." McTernan, 564 F.3d at 658 (emphasis added).

There are at least four paths a plaintiff may take to establish the existence of a municipality's illegal policy or custom.  "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005); see Monell, 436 U.S. at 658.

The amended complaint lacks any factual allegations implicating a policy or custom on the part of the municipal defendants that directly caused the alleged constitutional deprivations. At most, plaintiff alleges that LaRue directed Bonazza over the telephone to handcuff plaintiff in the front of her body and place her in the backseat of the police vehicle during the drive to the Hanover Township police department for plaintiff's arraignment.  Taking these facts as true, there is no factual allegation from which this court could infer that LaRue's decision was related to a municipal policy or custom.  Plaintiff failed to state a plausible claim upon which relief can

be granted with respect to either municipal defendant, and the motions to dismiss as to those defendants are granted without prejudice.

### B. Excessive force claims against Price and Bonazza[5] under the Fourth Amendment

Excessive force claims (incorporated against the States by the Due Process Clause of the Fourteenth Amendment, and enforced under § 1983) are analyzed under the Fourth Amendment. Rodriguez v. Passaic, 730 F. Supp. 1314, 1320 (D.N.J. 1990). "'[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigation stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .'" In re City of Phila. Litig., 49 F.3d 945, 962 (3d Cir. 1995) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

A claim for excessive force must involve a "seizure" that was unreasonable. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). "[A] suspect is not seized until he submits to the police's show of authority or the police subject him to some degree of physical force." Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999). The reasonableness standard under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "'Not every push or shove, even if it may seem

---

[5] Plaintiff sued Price and Bonazza in their official as well as individual capacities. (See Am. Compl. (ECF No. 36) as 1.) "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, Price and Bonazza may only be held liable under § 1983 in their official capacities "if the constitutional violation[s] at issue w[ere] in fact caused by the implementation or execution of a municipal 'policy, statements, ordinance, regulation or decision officially adopted and promulgated by municipal officiales [sic].'" Bright v. Westmoreland Cnty., 380 F.3d 729, 736 n.2 (3d Cir. 2004) (citing Monell, 436 U.S. at 691-94)). Having found that the complaint does not implicate any policies or customs of the municipal defendants that violated plaintiff's constitutional rights, the court cannot conclude there is a plausible claim against Price and Bonazza in their official capacities under § 1983. See Id. at 736 n.2; see also McCachren v. Blacklick Valley Sch. Dist., 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002) (dismissing official capacity actions against the individual defendants because "the potential liability of the [municipal entities]" rendered "the official capacity actions needlessly duplicative.").

unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham, 490

U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Other factors to

consider "include 'the duration of the [officer's] action, whether the action takes place in the

context of effecting an arrest, the possibility that the suspect may be armed, and the number of

persons with whom the police officers must contend at one time.'"  Couden v. Duffy, 446 F.3d

483, 497 (3d Cir. 2006) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

The "'reasonableness' of a particular use of force must be judged from the perspective of

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490

U.S. at 396.  The reasonableness finding should allow

> for the fact that police officers are often forced to make split-
> second judgments – in circumstances that are tense, uncertain, and
> rapidly evolving – about the amount of force that is necessary in a
> particular situation.
>
> As in other Fourth Amendment contexts, however, the
> "reasonableness" inquiry in an excessive force case is an objective
> one: the question is whether the officers' actions are "objectively
> reasonable" in light of the facts and circumstances confronting
> them, without regard to their underlying intent and motivation.

Id. at 397.  There is no "easy-to-apply legal test in the Fourth Amendment context" and "in the

end we must still slosh our way through the factbound morass of 'reasonableness.'"  Scott v.

Harris, 550 U.S. 372, 383 (2007).

The court must determine at this stage of the pleadings whether the factual allegations of

the amended complaint are sufficient for the court to conclude that there is a plausible excessive

force claim.  In making this determination, the court must assume the veracity of the factual

allegations of the complaint.  Iqbal, 129 S. Ct. at 1950.

Plaintiff, a sixty-six-year-old woman, alleges that, while standing in the front yard of her

property and without provocation, she was arrested by Bonazza and Price for disorderly conduct.

12

Bonazza announced that he was going to arrest plaintiff and then called Price to assist him in effectuating the arrest. Plaintiff contends that she did not engage in any activity that justified the officer's actions. Tellingly, there are no facts set forth in the complaint suggesting that plaintiff posed an immediate threat to the safety of the officers or others, that she was actively resisting arrest or attempting to evade arrest by flight, or that she may have been armed during the arrest. Plaintiff alleges that, in effectuating the arrest, Price grabbed plaintiff by her right arm, turned her around, pushed her hard against the police vehicle, and tightly placed handcuffs on her. When plaintiff asked the officers to refrain from putting her in the backseat of the vehicle because she had a panic and anxiety disorder and asked the officers to telephone her doctor, the officers refused; instead, Bonazza pushed plaintiff's head down and pushed her into the backseat of the police vehicle. Plaintiff alleges that the officers' actions, *inter alia*, caused her pain and suffering, including injuries to her back, right arm, right shoulder, left artificial knee and right knee, as well as an increased need for blood pressure medication. (See Am. Compl. at 6.)

While the officer's actions under other circumstances could be reasonable means of effectuating an arrest, the factual allegations concerning the use of force in this case support a plausible claim that the force was objectively unreasonable in light of the particular facts surrounding plaintiff's arrest. If the allegations that the plaintiff did not pose any threat to the officers at the time of the arrest are proven, a reasonable fact finder could conclude it was objectively unreasonable for the officers to push plaintiff in an aggressive manner which resulted in various injuries. Assuming the veracity of the factual allegations in the complaint, plaintiff sufficiently pled a plausible claim for excessive force upon which relief could be granted, and the motions to dismiss are denied with respect to those claims.

### C. Unlawful arrest claims against Price and Bonazza under the Fourth Amendment

Plaintiff asserts that the officers committed a "False Arrest of Disorderly Conduct." (Am. Compl. at 6.) The court reads those claims to be for unlawful arrest under the Fourth Amendment. To succeed on a claim for unlawful arrest under the Fourth Amendment, an arrestee must prove that, under the facts and circumstances within the officer's knowledge, "a reasonable officer could not have believed that an offense had been or was being committed by the person to be arrested." Mosley v. Wilson, 102 F.3d 85, 94-95 (3d Cir. 1996). A successful unlawful arrest claim will turn on whether the arresting officer had probable cause to arrest the plaintiff for the relevant offense. See Snell v. City of York, 564 F.3d 659, 671 (3d Cir. 2009); Orsatti v. N.J. State Police, 71 F.3d 480, 484-85 (3d Cir. 1995).

"In assessing the presence of probable cause, a court must determine" whether "'at the moment the arrest was made, the officers had probable cause to make it.'" Snell, 564 F.3d at 671 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "In other words, 'whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Id.

Assisting officers who participate in unlawful arrests cannot shield themselves from liability simply because they acted in reliance on the probable cause determinations of other officers. Whitley v. Warden, 401 U.S. 560, 568 (1971). "[S]tatements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause." Rogers v. Powell, 120 F.3d 446, 453 (3d Cir. 1997). Thus, "[p]robable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." Id.

Under Pennsylvania law, disorderly conduct is defined at 18 PA. CONS. STAT. § 5503

("section 5503") as follows:

> **(a) Offense defined.--**A person is guilty of disorderly conduct if, with intent to cause *public* inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture; or
>
> (4) creates a hazardous or physically offending condition by any act which serves no legitimate purpose of the actor.

18 PA. CONS. STAT. § 5503 (emphasis added); see Snell, 564 F.3d at 671. In Pennsylvania,

whether an individual's "words or acts rise to the level of disorderly conduct hinges upon

whether they cause or unjustifiably risk a public[6] disturbance." Commonwealth v. Hock, 728

A.2d 943, 946 (Pa. 1999). "The cardinal feature of the crime of disorderly conduct is public

unruliness which can or does lead to tumult and disorder." Commonwealth v. Greene, 189 A.2d

141, 144 (Pa. 1963). The crime of disorderly conduct

> is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace; it is thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the alleged criminal has the right to operate within its clearly outlined circumference.

Greene, 189 A.2d at 145.

---

[6] Section 5503 defines the word "public" as it is used in the statute to mean "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 PA. CONS. STAT. § 5503(c).

Viewing the factual allegations as true, the court concludes there is a plausible claim that probable cause did not exist for plaintiff's arrest. There is no allegation in the complaint suggesting plaintiff was violating any provision of section 5503 during the events preceding her arrest. Plaintiff alleged she was on her property. If that allegation is proven to be true, she could not have intended to cause "*public*" inconvenience, annoyance or alarm, as that word is defined under the statute.

Plaintiff alleges she asked Bonazza several times to remove people from her property who were threatening her because she had requested the park's curfew to be enforced. Bonazza told plaintiff to go inside her house, that plaintiff "was the problem," and, when she refused to go inside, that he was going to arrest her. The complaint does not contain any factual allegations demonstrating plaintiff engaged in threating or violent behavior, made unreasonable noise, used obscene language, or created a hazardous or physically threatening condition.[7]

Price relies upon Doherty v. Haverkamp, No. 93-5256, 1997 WL 297072 (E.D. Pa. May 28, 1997), for the proposition that an assisting officer from another jurisdiction is entitled to rely on information provided by a fellow officer with respect to the probable cause necessary to effectuate a plaintiff's legal arrest. Doherty, 1997 WL 297072, at *10. Under that theory, Price argues she did not need to conduct an independent investigation into the existence of probable cause. Price's reliance upon Doherty, however, is misplaced because, in that case, the assisting officer was permitted to assume the validity of an arrest warrant. In the instant case, plaintiff's

_____

[7] Bonazza asserts that plaintiff makes conclusory allegations that she did nothing wrong prior to her arrest and cites Garcia v. County of Bucks, 155 F. Supp. 2d 259 (E.D. Pa. 2001), for the proposition that an arrestee's protest that he or she is innocent of any wrongdoing is not, in itself, sufficient to defeat probable cause. The court in Garcia held that "[a]n officer making an arrest *pursuant to . . . a warrant* generally is not required to investigate the arrestee's claim of innocence or mistaken identity." Garcia, 155 F. Supp. 2d at 265 (emphasis added). Here, plaintiff was not arrested pursuant to a warrant and Bonazza is not entitled to the same level of deference afforded the officer in Garcia because he was required to make a probable cause determination without the benefit of a presumably valid arrest warrant. Plaintiff's allegations that she was an innocent bystander subjected to unruly individuals who threatened her and refused to vacate her property must be taken as true for purposes of the motions to dismiss and implicate whether the officers had probable cause to arrest her for a violation of section 5503.

arrest was conducted without a warrant, and the validity of Price's actions therefore will turn on whether Bonazza's statements to Price were sufficient to permit a finding that there was probable cause to make the arrest.  United States v. Hensley, 469 U.S. 221, 231 (1985).  Because the facts alleged in the complaint plausibly establish Bonazza did not have probable cause to arrest plaintiff for disorderly conduct under section 5503, Price at the motion to dismiss stage cannot avoid liability as the assisting officer by relying on Bonazza's probable cause determination.  For the foregoing reasons, plaintiff asserted plausible claims for unlawful arrest upon which relief could be granted, and the officers' motions to dismiss are denied with respect to those claims.

### D. Malicious prosecution claim against Bonazza under the Fourth Amendment

To establish a malicious prosecution under § 1983, a plaintiff must demonstrate:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  Bonazza contests only the fifth prong of malicious prosecution under Marasco and so the court will limit its analysis to that prong.

To satisfy the fifth prong, plaintiff must show that she suffered a seizure *as a consequence of a legal proceeding*.  While "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," attending one's trial is not a seizure for purposes of a § 1983 malicious prosecution claim.  DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005); see Penberth v. Krajnak, No. 06-1023, 2008 WL

509174, at *17 n.22 (M.D. Pa. Feb. 21, 2008) (plaintiff attending a preliminary hearing before the district judge did not satisfy the seizure requirement).

The seizure prong of a malicious prosecution claim is not met when a plaintiff fails to allege facts demonstrating sufficient post-arrest restrictions on her liberty by the government. Compare Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *3 (E.D. Pa. Aug. 16, 2007) (failing to satisfy the fifth element when the defendants did not impose any restrictions on the plaintiff's liberty after his arraignment – the only seizure alleged was the plaintiff's arrest and that occurred *prior* to the initiation of legal proceedings); with Gallo v. City of Phila, 161 F.3d 217, 222 (3d Cir. 1998) (although recognizing it was a close question, evidence that the plaintiff was required to post a $10,000 bond, had to attend all court hearings, was required to contact pretrial services on a weekly basis, and was prohibited from traveling outside New Jersey and Pennsylvania amounted to a seizure).

The instant case is similar to the facts in Lopez. Plaintiff did not allege any government acts that would qualify as a seizure occasioned by a legal proceeding. As explained in DiBella, plaintiff's arraignment cannot, standing alone, meet the requirements of a sufficient restriction on her liberty under the Fourth Amendment. Notably, plaintiff alleges her arrest occurred prior to her arraignment. Her arrest cannot be construed as a seizure caused by a legal proceeding. Because there is no factual allegation sufficient to satisfy a conclusion that it is plausible plaintiff was seized as contemplated by the fifth prong of a malicious prosecution claim, Bonazza's motion to dismiss will be granted with respect to that claim.

### E. Conspiracy claims against Price and Bonazza under § 1983

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great Western Mining & Mineral Co. v. Fox

Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010); see Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (explaining that a conspiracy requires a "meeting of the minds"); see also Shearin v. E.F. Hutton Grp., Inc., 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), abrogated on other grounds by Beck v. Prupis, 529 U.S. 494 (2000).  Pursuant to the pleading standards promulgated under Twombly, "a bare assertion of conspiracy will not suffice."  Twombly, 550 U.S. at 556; see Iqbal, 129 S. Ct. at 1949 (a court is not required to accept as true legal conclusions contained in a complaint).  With respect to conspiracy claims, a plaintiff must plead facts that raise "a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  Twombly, 550 U.S. at 557.

Plaintiff asserts in her amended complaint that she is suing defendants for conspiracy under § 1983 because "[a]ll defendants Conspired to help each other."  (Am. Compl. at 6.) Plaintiff's assertion falls well below the standards espoused in Twombly and Iqbal and is nothing more than a legal conclusion that the defendants "conspired" with no supporting factual allegations related to the period, object, or actions taken in furtherance of the alleged conspiracy. See Great Western, 615 F.3d at 178 (rejecting allegations of "a corrupt conspiracy," "an agreement," or "an understanding in place" as conclusory).  Because plaintiff did not aver any facts supporting her claim for conspiracy, plaintiff failed to make out a plausible claim upon which relief can be granted and the officers' motions to dismiss will be granted with respect to those claims.

### F. Claims against Price and Bonazza implicating the Eighth Amendment

"[T]he Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners," and "applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (citing City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)). A pretrial detainee's claim alleging a violation of the prohibition against cruel and unusual punishment is construed as one based on the Due Process Clause of the Fourteenth Amendment. Natale, 318 F.3d at 581.

As a threshold matter, plaintiff does not allege that she was detained pretrial or that the government secured a formal adjudication of guilt; to the contrary, plaintiff asserts she was found not guilty on the charge of disorderly conduct. Plaintiff, therefore, does not allege any cognizable claim under the Eighth or Fourteenth Amendments with respect to her right to be free from cruel and unusual punishment because she was not a prisoner or a pretrial detainee.[8] At most, the factual allegations are that plaintiff was arrested, transported to police headquarters for booking, and brought before a judge for her arraignment. None of those situations constitute pretrial detention and her Eighth Amendment claims against Price and Bonazza must be dismissed.

### G. Due process violations under the Fifth and Fourteenth Amendments

Plaintiff alleges generally that "Defendants violated the "Due Process Clauses" of the Fifth and Fourteenth Amendment [sic]." The court notes initially that plaintiff's claims under the Fifth Amendment must be dismissed for failure to state a claim upon which relief can be granted because none of the actors in the complaint are alleged to be members of the federal government – Fifth Amendment protections extend only to claims against federal actors.

---

[8] Pretrial detention is defined as "[t]he holding of a defendant before trial on criminal charges either because the established bail could not be posted or because release was denied." BLACK'S LAW DICTIONARY 480 (8th ed. 2004).

Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983); see Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315-16 n.6 (M.D. Pa. 2004) (granting summary judgment with respect to claims under the Fifth Amendment because the action involved only *state* actors).

With regard to plaintiff's due process claims under the Fourteenth Amendment, the amended complaint is completely wanting of factual allegations concerning how plaintiff's due process rights were violated. The court is unable to discern any due process claim under the Fourteenth Amendment and will not speculate as to what claims, if any, plaintiff could have raised under that amendment. See Twombly, 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, the motions to dismiss will be granted because there is no plausible due process claim under the Fourteenth Amendment set forth in the complaint.

### H. Claims against Havelka

Plaintiff's suit against Havelka is barred by the doctrine of immunity. As a magisterial district judge acting in his judicial capacity, Havelka has absolute immunity from suit under § 1983. See Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772 (3d Cir. 2000) (granting absolute immunity to the Administrative Judge of the Family Division of the Court of Common Pleas); Weldon v. Cywinski, 222 F. App'x 205, 207 (3d Cir. 2007) (holding the district court "properly determined that [a Pennsylvania] magistrate judge . . . was entitled to absolute judicial immunity"); Basinger v. Wentz, No. 08-1545, 2009 WL 1172708, at *3 (M.D. Pa. Apr. 29, 2009) (reviewing the responsibilities of Pennsylvania magisterial district judges, and holding that they are entitled to immunity for their judicial actions). This immunity is extended to judges because "the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have," and to hold judges personally

liable for their decisions would "manifestly detract from independent and impartial adjudication." Forrester v. White, 484 U.S. 219, 226-27 (1988). The immunity is not overcome even in the presence of allegations that the judge acted "with malice or bad faith." Mireles v. Waco, 502 U.S. 9, 11 (1991). The only two circumstances in which a judge is not immune are when a judge acts outside of his judicial capacity or in the "complete absence of all jurisdiction." Id. at 11-12.

As an independent basis for dismissing actions against state judges, the Eleventh Amendment to the United States Constitution grants sovereign immunity to individuals acting as an extension, or "arm" of the state. Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. CONST. amend. XI. This amendment extends immunity to nonconsenting states "from suits brought in federal court by its own citizens as well as by citizens of another state." Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 238 (3d Cir. 2005). Eleventh Amendment immunity also contemplates judges sued in their official capacities. See Buchanan v. Gay, 491 F. Supp. 2d 483, 493 (D. Del. 2007). When a state does not waive its Eleventh Amendment immunity from suit, a judge sued in his or her official capacity is protected by sovereign immunity. See id.

Plaintiff failed to plead facts that suggest Havelka acted outside of his judicial capacity or in the absence of jurisdiction. Furthermore, the Commonwealth of Pennsylvania did not waive its sovereign immunity in this case, and any claim against Havelka in his official capacity as an arm of the state is barred because such a claim would be barred against the state itself.

Here, Havelka enjoys the benefit of absolute judicial immunity because his alleged actions occurred within the scope of his judicial capacity. Allegations that Havelka falsified documents, threatened plaintiff with additional complaints, and denied her request for her son's assistance at a hearing, relate to the exercise of the judge's duties with respect to various cases pending before him. While Havelka's threat about other potential complaints may be evidence of bad faith (a judge does not typically threaten a criminal defendant with further prosecution for failure to change a plea), the act itself was of a judicial nature because it was made in the context of a discussion concerning plaintiff's plea in her disorderly conduct charge. See Mireles, 502 U.S. at 13 (the appropriate inquiry is the "nature" and "function" of the act, not the "act itself"). Because plaintiff did not aver sufficient facts to support a plausible claim that Havelka's actions were outside his judicial capacity or in complete absence of all jurisdiction, Havelka's original motion to dismiss will be granted.

### I. State law claim against Bonazza for intentional infliction of emotional distress

To establish a claim under Pennsylvania law for intentional infliction of emotional distress ("IIED"), a plaintiff must show that a defendant: (1) by extreme and outrageous conduct (2) intentionally or recklessly caused (3) severe emotional distress to the plaintiff. Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). Extreme and outrageous conduct is an "amorphous social construct" to describe causation for emotional distress, an "equally amorphous injur[y]." Cruz v. Princeton Ins. Co., 972 A.2d 14, 19 (Pa. Super. Ct. 2009). Consequently, a plaintiff's claim for IIED must fail unless he or she can demonstrate "medical documentation of the distress alleged through observation of symptoms." Id. Requiring expert medical testimony is necessary "in light of the unique elements of [IIED]." Shiner v. Moriarty, 706 A.2d 1228, 1239 (Pa. Super. Ct. 1998).

Extreme and outrageous conduct is defined in Pennsylvania as conduct "'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 182 (Pa. Super. Ct. 1996) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. D (1977)) (allegations that the defendants expressed resentment and ill will toward the plaintiff and harassed the plaintiff were clearly insufficient to establish extreme and outrageous conduct. Conduct deemed sufficiently outrageous in Pennsylvania to constitute IIED includes:

> (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease.

Dull v. West Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (holding that improper arrests were not sufficiently extreme and outrageous to support a claim for IIED, even when the court denied the defendants' motion for summary judgment on the plaintiff's excessive force claim).

In the case *sub judice*, plaintiff supports her IIED claim with allegations that Bonazza, *inter alia*, failed to remove individuals from her property; arrested plaintiff without probable cause and with excessive force; forced plaintiff to ride in the back seat of the police car and drove at a high rate of speed; and laughed at plaintiff during her arraignment and harassed her for refusing to plead guilty to the charge of disorderly conduct. Accepting as true all plaintiff's well-pled facts, a reasonable jury could not find that plaintiff alleged sufficient facts to demonstrate a plausible claim for IIED. Plaintiff's allegations of harassment, unlawful arrest, and excessive force are similar to the allegations in Dull and Hunger. Like the holdings in those cases, the allegations in this case do not go beyond all possible bounds of decency as required by

Pennsylvania courts.[9]  Based upon the allegations in the complaint, the court cannot conclude there is a plausible IIED claim.  Accordingly, Bonazza's motion to dismiss plaintiff's claim for IIED will be granted.


### V. Conclusion

Municipal defendants' motions to dismiss are granted because plaintiff failed to plead sufficient facts from which the court could plausibly infer municipal liability.  Price and Bonazza's motions to dismiss are granted in part and denied in part.  Plaintiff's claims against Price and Bonazza for excessive force and unlawful arrest under the Fourth Amendment survive because the factual allegations are sufficient for the court to conclude that there are plausible claims for those violations.  Havelka's motion to dismiss is granted because the factual allegations of the complaint show he is protected from suit by absolute judicial immunity.  With respect to all claims dismissed, those claims are dismissed without prejudice.  Plaintiff, if she can plead facts consistent with Rule 11 of the Federal Rules of Civil Procedure, may file a motion to amend her complaint.[10]  An appropriate order will follow.

By the court:

/s/JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge


Dated: February 10, 2011

---

[9] Even if the court were to conclude that the allegations were sufficient for the court to infer extreme and outrageous conduct, there are no factual allegations in the complaint suggesting plaintiff received medical treatment for her emotional distress, a necessary requirement for an IIED claim under Pennsylvania law.

[10] Rule 11 "imposes on any party who signs a pleading, motion, or other paper – whether the party's signature is required by the Rule of is provided voluntarily – an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing," and the "standard is one of reasonableness under the circumstances." Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991); see Abdul-Akbar v. Watson, 901 F.2d 329, 334 n.2 (3d Cir. 1990) (the objective standard of reasonableness under Rule 11 applies to *pro se* litigants).