IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLORIA WHITING, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 09-1113 |
| OFFICER LARRY A. BONAZZA, et al. | ) |
|       Defendants. | ) |

**MEMORANDUM ORDER**

CONTI, District Judge.

*I. Introduction*

Pending before the court are two motions to dismiss the second amended complaint (ECF No. 67) filed by pro se plaintiff Gloria Whiting ("Whiting" or "Plaintiff"). On June 2, 2011, defendants Burgettstown Borough, Officer Amber Price, and Police Chief George Roberts filed a joint motion to dismiss the claims asserted against them in the second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6). (ECF No. 69.) On June 3, 2011, defendants Smith Township and Police Chief Bernie LaRue likewise filed a joint motion to dismiss the claims asserted against them in that complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6). (ECF No. 72.)

Magisterial Judge Gary Havelka was originally joined as a defendant in this action, but all claims against him were dismissed by the court in a memorandum opinion and subsequent order on February 10, 2011. (ECF Nos. 49 & 50.) Likewise, Officer Larry Bonazza is joined as a defendant in this lawsuit, but neither of the motions to dismiss are filed on his behalf or

concern claims against him. Although one of the motions to dismiss is captioned to indicate that it is filed on behalf of Officer Price (ECF No. 69), it does not concern any of the claims against her. Thus, the pending motions to dismiss concern only the claims asserted against Burgettstown Borough and Smith Township (collectively, the "municipal defendants") and Chiefs Roberts and LaRue (collectively, the "police chief defendants").

For the reasons set forth below, the defendants' motions will be granted and the claims asserted in the second amended complaint against the police chief defendants and the municipal defendants will be dismissed with prejudice.

## *II. Standard of Review*

A 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986).) "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing 490 F.3d at 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n] - that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

*Pro se* plaintiffs are held to a less stringent standard than individuals represented by counsel. Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("*pro se* litigants are

held to a lesser pleading standard than other parties"). A *pro se* plaintiff, however, is still required to adhere to standard rules of civil procedure. See McNeil v. United States, 508 U.S. 106, 113 (1993); Haines v. Kerner, 404 U.S. 519, 520 (1972). While the court must accept as true all factual allegations in a complaint, it "need not credit a complaint's . . . legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Even though plaintiff is *pro se*, she must "set forth sufficient information to outline the elements of [her] claim." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)). Thus, plaintiff is required to present enough factual allegations for the court, accepting those allegations as true, to determine whether there are plausible claims that defendants violated plaintiff's federal rights. Id.

### III. Discussion

On August 21, 2009, plaintiff, proceeding *in forma pauperis* and *pro se*, filed her original complaint against defendants (ECF No. 2) arguably within the context of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In plaintiff's original complaint, there were no factual allegations supporting her claims against defendants or demonstrating how plaintiff's rights were violated by any defendant. On July 2, 2010, the court issued a memorandum opinion and order granting defendants' motions to dismiss the complaint and granting plaintiff leave to amend the complaint. (ECF No. 34.) Subsequently, plaintiff filed an amended complaint (ECF No. 36). On February 10, 2011, the court dismissed all claims against the municipal defendants without prejudice, and dismissed without prejudice all claims against Officers Price and Bonazza, except for Fourth Amendment claims for excessive force and unlawful arrest.

On March 3, 2011, plaintiff filed a motion for leave to amend the first amended complaint. (ECF No. 54.) At a hearing on the motion, on April 19, 2011, the court denied the motion without prejudice, but granted plaintiff leave to file a second amended complaint. Plaintiff filed her second amended complaint on May 19, 2011. (ECF No. 67.) Plaintiff joined the municipal defendants in the second amended complaint, and for the first time included claims against the police chief defendants, who were not joined in any of her previous complaints. Plaintiff asserts false arrest and excessive force claims against all defendants named in the second amended complaint. (Id.) The motions to dismiss will be considered first with respect to the claims alleged against the police chiefs, and second with respect to the municipal defendants. Because of the limited nature of these motions to dismiss, the court will not recite the entire factual history of the case, but will provide factual details where necessary in the court's analysis of the issues presented.

A. The Police Chief Defendants

First, in the motions to dismiss (ECF Nos. 69 & 72) the relevant defendants argue that the claims against the police chief defendants must be dismissed because (1) the police chief defendants were never served with plaintiff's complaint, amended complaint, or second amended complaint; (2) the statute of limitations bars any action against the police chief defendants; (3) the court order allowing the plaintiff to file her second amended complaint did not permit the addition of parties; and (4) the complaint fails to state a claim upon which relief may be granted. (ECF No. 69 ¶¶ 9-12; ECF No. 72 ¶¶ 7-8.)

Because the statute of limitations bars the claims alleged against the police chief defendants, the court need not consider the alternative arguments raised. Although a statute of

limitations defense generally cannot be raised in the context of a Rule 12(b)(6) motion to dismiss, an exception is made "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994).

The statute of limitations for a § 1983 claim is determined by the personal injury tort law of the state where the claim arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). The statute of limitations for the claims alleged by plaintiff is, therefore, two years under the applicable Pennsylvania statute. 42 PA. CONS. STAT. § 5524(2); Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Federal law determines when a claim accrues; under federal law, a claim accrues (and the statute of limitations begins to run) "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998); accord Kach, 589 F.3d at 634-35. "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." Kach, 589 F.3d at 634 (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)). The accrual of a claim is based upon an objective determination whether a reasonable person should have known of the injury, and does not depend upon the subjective knowledge of the plaintiff. Id. (citing Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988)).

In this case, all of plaintiff's alleged injuries relate to her arrest on June 16, 2008. June 16, 2008 is the day on which the claim for false arrest and excessive force accrued. That is the date on which, accepting the well-pled facts of the second amended complaint, a reasonable person would have known or should have known her injury occurred. The second amended complaint was filed on May 19, 2011, more than eleven months after the limitations period for plaintiff's civil rights claims against the police chief defendants ended.

Furthermore, the claims cannot relate back to the filing of plaintiff's original complaint because according to the facts alleged in the second amended complaint, plaintiff was aware of the involvement of the police chief defendants in supervising the officers she filed suit against in her original complaint. She, however, failed to assert any claim against them at that time. See Garvin v. City of Phila., 354 F.3d 215, 221-22 (3d Cir.2003) ("[A]n amended complaint will not relate back if the plaintiff had been aware of the newly named parties when she filed her original complaint and simply chose not to sue them at that time."); Lape v. Pennsylvania, 157 F. App'x 491, 497 (3d Cir. 2005) (applying the Garvin rule in the context of a § 1983 claim). The claims against the police chief defendants must be dismissed with prejudice.

B. The Municipal Defendants

The municipal defendants in the pending motions to dismiss argue that plaintiff pleaded insufficient facts to raise a plausible claim of municipal liability under § 1983. (ECF No. 69 ¶¶ 7-8; ECF No. 72 ¶ 9.)

A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, the plaintiff must "demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). "'Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'" Id. (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481

(1986))). Customs are "'practices of state officials . . . so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 691). One method of demonstrating custom is by showing a "practice is so well settled and widespread that the policymaking officials have either actual or constructive knowledge of it." Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997).

After identifying a policy or custom, a plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Board of Cnty Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997); Berg, 219 F.3d at 276. Before the Brown decision, the Supreme Court described the causation requirement as requiring a "direct causal link" between the policy or custom and the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). "If . . . the policy or custom does not facially violate federal law, causation can be established only 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Berg, 219 F.3d at 276 (quoting Brown, 520 U.S. at 407).

Proving "simple or even heightened negligence will not suffice" to meet the causation requirement. Id. "It is a particularly willful type of recklessness that is inherent in the deliberate indifference standard." Simmons v. City of Phila., 947 F.2d 1042, 1060 n.13 (3d Cir. 1991). In order to assert a constitutional violation against a municipality, a plaintiff must show that deliberate "indifference resulted either from a decision officially adopted and promulgated or from a permanent and well-settled practice." Id. at 1059. Deliberate indifference may be related to training, hiring, supervision, discipline, or failure to adopt necessary policies. See FEDERAL JUDICIAL CENTER, SECTION 1983 LITIGATION 99-100 (2d ed. 2008). Under a failure-to-train theory of deliberate indifference, a plaintiff must identify a *particular* deficiency in the training

8

and prove that that particular deficiency was the cause of the plaintiff's constitutional injury. Canton, 498 U.S. at 390-91; Giles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005). Furthermore, the specifically identified lack of training must amount to deliberate indifference for the complaint to pass muster. Giles, 427 F.3d at 207 n.7.

There are at least four paths a plaintiff may take to establish the existence of a municipality's illegal policy or custom. "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005); see Monell, 436 U.S. at 658.

In dismissing plaintiff's claims of municipal liability asserted in the first amended complaint, this court held:

> The amended complaint lacks any factual allegations implicating a policy or custom on the part of the municipal defendants that directly caused the alleged constitutional deprivations. At most, plaintiff alleges that LaRue directed Bonazza over the telephone to handcuff plaintiff in the front of her body and place her in the backseat of the police vehicle during the drive to the Hanover Township police department for plaintiff's arraignment. Taking these facts as true, there is no factual allegation from which this court could infer that LaRue's decision was related to a municipal policy or custom. Plaintiff failed to state a plausible claim upon which relief can be granted with respect to either municipal defendant, and the motions to dismiss as to those defendants are granted without prejudice.

(ECF No. 49 at 10-11.) Plaintiff was permitted to amend her complaint to include more factual allegations. The second amended complaint again contains allegations that Chief LaRue refused to talk to plaintiff on the phone when she was arrested, and directed officers over the phone to

handcuff her and place her in the police vehicle.  (ECF No. 67 at 5.)  The second amended complaint also contains the following factual allegations relating to the municipal defendants:

1. After the alleged unlawful arrest, plaintiff complained about Officer Price to Burgettstown.  (Id. at 6.)

2. After the incident and the initiation of criminal proceedings against her, plaintiff alleges various incidents of harassment and threats by police officers in retaliation for her refusal to plead guilty to the charges against her.  (Id. at 7, 8)

3. Chief LaRue ordered Bonazza and Price to handcuff plaintiff and transport her from Smith Police Station to Hanover Police Department in a car.  (Id. at 7.)

4. Joseph Murray, a Smith Township supervisor, attended plaintiff's preliminary criminal hearing, and was aware of the officers' criminal actions.  (Id.)

5. Members of the Burgettstown Borough Council ignored plaintiff's complaint and complaints from other citizens about police abuse, allowing Officer Price to continue abusing other citizens.  (Id. at 8.)

6. Burgettstown's mayor told plaintiff that he would investigate her incident.  (Id.)

7. Both municipal defendants "have numerous lawsuits filed against them in Federal Court."  (Id.)

8. Carla Rosenberg, the Burgettstown Crime Watch President, went before the municipal council and testified that she has received numerous complaints about officer abuse.  (Id.)

9. The Burgettstown Borough police department is under investigation by Washington County District Attorney, Steve Toprani, for police abuse.  (Id. at 9.) Toprani has received thirty or forty complaints from citizens regarding police

abuse by members of the Burgettstown and Smith police departments. (Id. at 8.) Dan Johnson, a Burgettstown Borough Council Member, stated on March 6, 2009, that Toprani was investing the Burgettstown Borough police department. (Id. at 9.)

10. Thomas Schlinski, a Smith Township Supervisor, spoke to officers on the night that Plaintiff was arrested and told them "to do what you have to do." (Id.)

11. Defendants "have tolerated and permitted a pattern of Police Harassment, Excessive Force, and false arrest." (Id. at 10.)

12. The municipal defendants "permitted and tolerated a pattern and practice of not recognizing" complaints made by citizens. (Id.)

13. These policies and customs have led officers to believe that police misconduct would not be investigated, and has encouraged police harassment and violation of civil rights. (Id.)

14. The municipal defendants "have a custom and/or practice of failing to train and supervise their Police Officers" causing "[a]s a direct result of this policy" citizens to be subject to false arrests and use of excessive force. (Id.)

15. The municipal defendants caused injury to plaintiff by their "failure . . . to recognize and instruct police officers to recognize medical ailments and to summon treatment."[1] (Id. at 11.)

---

[1] Part of plaintiff's claim of excessive force is based upon the officer's ignoring her advisements that she has panic and anxiety disorders and cannot ride in the backseat of automobiles without extreme discomfort.

      16. Defendants knew about the allegations of police misconduct contained in the complaint but "failed and refused to take reasonable steps to eliminate abuse in the district." (Id.)

Plaintiff did not plead facts sufficient to state a claim against the municipal defendants for a custom of acquiescing to violations of constitutional rights. See Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (holding that the plaintiff must prove, among other elements under an "inaction theory," that the unwritten policy or custom of tolerating civil rights violations must have a "direct causal link" to the constitutional violation). Nearly all of plaintiff's factual allegations either occur after her alleged injury, or the second amended complaint is silent as to their temporal relevance. Plaintiff's most compelling factual allegations directed toward the municipal defendants are the numerous citizen complaints filed with a variety of authorities, and the ongoing investigations being carried out by the Washington County District Attorney. There is, however, an absence of information in the complaint with respect to the timing of these facts. Because plaintiff failed, with respect to a municipal policy of acquiescence, to plead facts *predating* her alleged injury, the second amended complaint does not establish a plausibility that there was a municipal policy which *caused* her injury. Because causation is a necessary component of municipal liability, the second amended complaint is factually insufficient to create more than a mere possibility of a municipal policy which was the direct cause of her injury, and must be dismissed. Because plaintiff had three opportunities to state a claim against the municipal defendants, and because interminable amendment of the complaint would prevent the case from advancing while unduly burdening the defendants, the court finds that allowing the plaintiff to file a third amended complaint, granting her a fourth bite at the apple to state a claim, would be inequitable. See Grayson v. Mayview State Hosp., 293

F.3d 103, 108 (3d Cir. 2002) (reversing district court for failing to grant plaintiff right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile); 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 2010) ("[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied."). Under the circumstances of this case, the claims against the municipal defendants must be dismissed with prejudice.

ORDER

AND NOW, this 30th day of January, 2012, It is hereby, ORDERED, ADJUDGED and DECREED that all claims against defendants George Roberts and Bernie LaRue are hereby DISMISSED with prejudice.

It is FURTHER ORDERED that the clerk shall terminate this case as to defendants George Roberts and Bernie LaRue.

It is FURTHER ORDERED, ADJUDGED and DECREED that all claims against defendants Smith Township and Burgettstown Borough are hereby DISMISSED with prejudice.

It is FURTHER ORDERED that the clerk shall terminate this case as to defendants Smith Township and Burgettstown Borough.

By the court,

　/s/ Joy Flowers Conti　
Hon. Joy Flowers Conti
United States District Judge